It pleases the Court, Counsel Nell Brown, Assistant Federal Public Defender here in the District of Oregon, on behalf of the petitioner Mr. Larson. I've reviewed the materials which were submitted by my client, and I'm pleased to be here to argue today because I see four substantial undefaulted issues in this case, and I hope to address all four. I believe each of these issues is an error that would warrant the grant of habeas relief, but cumulatively these four errors so undermine the reliability of the verdict in this case that I think a new trial is warranted. The four issues are the use of physical restraints, the exclusion of witnesses, the admission of Mr. Larson's prior conviction or other bad acts information, and the denial of substitute counsel. May I suggest that you would do well to concentrate on the shackling issue? Yes, Your Honor. In this case, Mr. Larson was forced to wear a visible physical restraint for the first couple of days of a five-day trial. Do you know, does the record show whether he was able to move around? He was representing himself, correct? He was representing himself. And the layout of the courtroom was such that could he get up and walk around as counsel would do when examining witnesses or making an opening statement to the jury? The record is not entirely clear on that issue. It is clear that the jury could see the brace. What the judge says, and I think it's at page 345 of the supplemental excerpt of the record, is you saw it and now you don't. No, I take that point. I'm just trying, they saw it, but they more than glimpsed it perhaps visible behind the table. If he was actually appearing to them standing up and moving around. I believe that he was, but it's not entirely clear from the record how much he was moving. I know that during a number of the pretrial hearings he was constantly asking for his shackles to be removed so that he could have some mobility. And my impression is that he was up and about and that that is what the judge was talking about when he said that he has a physical impairment. If that's the case, then how does that cut for or against prejudice to the jury? They're seeing this person close at hand, arguing his case, presenting his case, moving around. Do you think that aggravates or mitigates any prejudicial effect? I think it aggravates the prejudicial effect. Under Missouri v. Deck, the Supreme Court's 2005 case, which the district court here didn't have the benefit of, prejudice is presumed. And which wouldn't apply to this case? Sorry? Insofar as it decided anything new, it wouldn't apply to this case. And I think it's very clear from the decision in Deck that it isn't deciding anything new. There's no question of retroactivity. That case cites Illinois v. Allen and Holbrook v. Flynn, which were decisions 20 or 30 years earlier, and bases its presumption of prejudice on Holbrook. But you just said before that the district court didn't have the benefit of the case with regard to prejudice being presumed. Well, the idea that prejudice is presumed comes from the 1986 decision in Holbrook, where it says that the use of visible physical restraints is, quote, inherently prejudicial, unquote. And that's the source of the Deck presumption of prejudice. So I would suggest that the district court did have the benefit of Holbrook, but I think that the Deck court made it that much more explicit, that prejudice is presumed where the restraints are visible. And as the court is aware, the restraints here were visible. So the issue is basically a Strickland prejudice issue. Not a Strickland prejudice issue, a Brett prejudice issue, right? No, I believe under Deck prejudice is presumed. There's no question of harmless error. This is error under Deck. I don't think the court needs to go beyond that. Mr. Larson was prejudiced by the fact that the jury viewed his visible restraints. Missouri v. Deck says that physical restraints are prohibited by due process absent a trial court determination in the exercise of its discretion that they are justified by a state interest specific to a particular trial. There's no prejudice analysis necessary at all? Under Deck, I don't believe that there needs to be any analysis if the restraints are visible and the restraints here were visible. I think that that is the end of the inquiry. The other question under Deck is, of course, whether the trial court made any reasoned determination that there was an interest relative to the use of these restraints. And in this case, the record is fairly clear. There is no determination where the court in its discretion decides to use the restraints. Well, what Deck says is where a court without adequate justification orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The state must prove beyond a reasonable doubt that the shackling error complained of did not contribute to the verdict obtained. Right. And in this case, I don't believe the state has been able to prove that the shackling didn't contribute to the verdict obtained here. This would still be a direct analysis because that was a direct appeal on habeas. So why doesn't Brecht apply? If Chapman would apply, essentially they're saying Chapman applies an indirect appeal, right, that it isn't an automatic determination. Well, even under Brecht, I don't think that we can say that the shackling didn't affect the jury here. This is the type of inquiry, and Deck makes it clear that it's so impossible to tell how the jury was influenced by it that you can't determine whether it affected the outcome. But that impossibility- Is that what it's saying or is it just saying Chapman applies? I don't think that it's saying that Chapman applies. I think that it's saying that it's- That's what it cites in Deck. Well, even under- What I read was a cite based on a quote and citation to Chapman. Well, I think that even under the Brecht standard that this is not harmless error. And I would move on to my other issues, which I believe cumulatively- But that's the key issue. I don't want to argue it. Fine. But that seems to me to be the key issue in the case. I think there's a- I don't want to disagree with Your Honor. I do think this is a substantial issue in this case, but I think there's a question, a substantial question of cumulative error here. And I think the denial of- If you don't win on the first one, it's going to be hard to accumulate on the others. In other words, if you can't get by the prejudice issue in the first on this issue, then you're in no place as to the rest of the case, even if you're talking about cumulative error. Well, I don't know that that's true. If there are a number of errors in combination that are prejudicial in combination as opposed to individually, I think that under the case that it's cited to the- Before we leave, let's assume- Let's assume that- Before we leave the leg brace, let's assume that the jury saw him standing before them with the leg brace. He wasn't wearing chains, correct? That's correct. All right. And he wasn't handcuffed? No. Okay. So he had a leg brace on, and that he was mobile in the courtroom. Not perfectly mobile for the two days he was wearing it, but nonetheless, and that thereafter, for three days, he was mobile, obviously, because he didn't have the leg brace on. So what is that, five days of trial? Correct. So how does that weigh, even if we don't know for sure in the first two days he was standing, how does-why does that not factor into the Brecht analysis? I think you need to look at the court's comments to the jury. The court specifically said that the defendant was being shackled for security reasons. Yes. The court never said afterward, when he removed the shackles, that the defendant no longer presents a security threat. Instead, the judge simply refers to this physical impairment as the reason for removing the shackles. I think that using that term, in addition to using the language that it was a leg iron used to transport prisoners, it was extremely prejudicial. Is there any-was the jury aware that he was a prisoner? Well, I believe they were after the judge made that comment. In a normal course, they wouldn't have known that? They perhaps could have guessed that, but I don't know that it was clear. He was in street clothes and appeared at counsel table as his own attorney. So if it's normally used to transport prisoners, doesn't that just generally say that prisoners wear leg braces, so it's not that big a deal? I don't think that we can assume that the jury looked at it that way. The reason for the deck decision is based on the dignity of the process, the ability to communicate with counsel. And here, as Your Honor asked me earlier, I think it's even more important where you're being your own counsel that you be able to communicate and get around the courtroom. But also just so the jury doesn't believe that you're a danger or a security risk, and therefore that you must have committed the crime you're accused of. And I think that those policy reasons that underlie the deck decisions and the Illinois v. Allen and Holbrook decisions are really the heart of the issue here. And the judge's comments exacerbated the problems for which we prohibit shackling. I see that I only have 15 seconds remaining. No, you're over. But we'll give you a minute on rebuttal. But we're fully aware of the other errors that are in your brief that you're claiming. If you can gather, the Court's most focused on the shackling. May it please the Court, Kay McDonald for appellee, Palmatier. I'll be guided by this Court's interest in the leg brace issue. Obviously, we differ widely concerning the prongs of appellant's burden in order to win in habeas. Appellant has failed to even talk about the first barrier of ADEPA, and it has also failed to or she has failed to talk about Fry and Brett in a meaningful manner applicable to this case. So I'd like to do that. Could you address what the record does show about mobility? In other words, how do we have to assess what the record reflected that the Oregon courts were looking at and what we have to assume with respect to Mr. Larson's mobility during the time he had the leg brace on? Yes, and I agree with the opposing counsel that the record is not crystal clear concerning the degree of mobility that he had. However, I think the most reasonable reading of the record is that he was able to move around the courtroom, approach witnesses and so on, because otherwise the brace probably would never have been seen if it was seen. We make an argument that it's not entirely unambiguous from the record that it was visible at all. It doesn't really matter whether it was seen because it was noted. I mean, first of all, the judge said it was seen. Yes. But second of all, he said now you see it, now you saw it and now you don't see it, so he said you saw it, so he said it was seen. Yes. But quite aside from that. I'm not going to. Quite aside from that, it was noted and therefore. That's true, and it was noted, and so it was obvious to the jury that he had been wearing a form of security brace at that point. But I want to go back because I think opposing counsel has taken a giant leap into deciding that this was error in the first place. And let's start there because if it was not an abuse of discretion for the trial court to order even a visible leg brace in the first place, then we don't get any farther. I think that the district court did a very nice, able job in reviewing the record and indicating that there were a lot of justifications for the trial court's determination. The judge never made any of them. He never discussed it. He never. Well, I think it's implicit. There's nothing on the record to indicate why he did this, is there? And insofar as there is anything, which dealt with a preliminary hearing, I gather, it had to do with inadequate security, which wouldn't have done it anyway, which wouldn't have been a good reason. Okay. First of all, I'll set forth the facts that we believe show that the court did make a determination. I want to point out that in the Deck case, the Supreme Court was very clear to say that there are a lot of different procedural determinations that different jurisdictions make. It didn't disapprove of those. Actually, it said lower courts have disagreed about the specific procedural steps a court must take prior to shackling, about the amount and type of evidence needed to justify it, and about what forms of prejudice might warrant a new trial. That's the state of the federal law as we know it from the United States Supreme Court at this point. Wasn't Deck trying to straighten out some of that disagreement rather than accept it? I'm sorry? Wasn't Deck trying to straighten out some of that disagreement rather than accept it? Well, the only holding in Deck, and I agree with counsel that it didn't change the law. The law on direct appeal is that if the court orders visible restraints, then it must have a sufficient justification for doing so, and we don't disagree with that, particularly on direct appeal. Now, of course, appellant's burden shifts because he's in habeas and not on the direct appeal, but I'll reach that point later. The record does show, I believe, an implicit determination that a security device is necessary. The prosecutor first raised the issue at a pretrial hearing, and the court's discussion with petitioner at that time was in response to, you know, do we have security devices, are those necessary, and obviously the prosecutor was saying they were. Before the court made its implicit determination that appellant would be required to wear a leg brace, it assured him that, you know, one of the reasons that you're having to wear shackles in the pretrial hearing is because we are understaffed. So the court did make that notation. That's at SER 243 to 43. I think it's a reasonable inference. That can't be an adequate reason. I'm sorry? That can't be an adequate reason under the case law, can it? It's not the only reason, though, Your Honor. I didn't ask that question. I asked you whether it's an adequate reason under the case law. I think it is a factor that the court in its broad discretion can consider. Why? There isn't broad discretion. The statute is some standard seems to be extreme and exceptional cases, unusually obstreperous, criminal, dependent, et cetera. That standard would go to everybody, wouldn't it? Anybody who's charged with a serious crime. Yes. But the point is that if you do, and I agree that you have to have some person-specific reasons to order a security device. So that reason's no good. So let's just get rid of it. It just doesn't seem to be. It's a failure of the court. It can't be that you can commit a constitutional violation because you won't get adequate staff to preclude it. It may affect the type of security device. But I agree with Your Honor that you do have to have a person-specific reason. Here the trial court knew that this person had once escaped, that the person had once absconded, and that he would be because he was going to be moving around the courtroom conducting his own case. His counsel were going to be behind the bar. So why do you then take the leg brace off? I think, you know, well, let me just say this. You think. We speculate. Pardon? We think. We speculate. In DEC, the Supreme Court said that the record contains no formal or informal findings. The judge did not refer to the risk of escape or a threat to courtroom security. No, but it did decide that some form of security device, but not a visible leg brace. That was its initial decision. We're not going to put you in chains. The jury's not going to be able to see this. That's the decision that it made at that time based on the information that it had. And I think that that was not an abuse of its discretion under any standard. The judge made that, referred to it as non-visible. Was the defendant representing himself? At that time, no, but then. No, so that was probably the difference, right? Ultimately, yes. I know ultimately, yes. But what I'm saying is that may well have been the difference because if you were sitting behind a chair, it may not have been visible. But if you're walking around the courtroom, it may have been visible. That's correct. And the record does not say why the trial court said, let's take those off. It's just not there as far as I know. But you said it was because of a physical impairment. Do we know what he means by that? There's nothing in the record that indicates one way or the other. I bet if he was trying to move around the courtroom, that physically impaired him at least. If there was a physical impairment. Physical, the restraint itself is an impairment. That's why it's there, right, to prevent. Doesn't it clamp and then lock into a rigid vertical position? Exactly. You have to release it in order to make the leg bend if you're sitting? I think that's right. The court also knew at the time that it required him to wear the leg brace, assuming that it was visible, that he had already subpoenaed a couple of witnesses from the penitentiary who had themselves tried to escape essentially during their trip to the courtroom. I didn't understand that observation. I mean, so maybe they'll escape. What does that have to do with him? Well, it has to do with the fact that you put those two things in combination. He's moving freely about the courtroom. You have essentially two dangerous people. Possibly they've communicated. It's a consideration. I don't pretend to say that that's the whole thing. And, you know, I do think it's fair to say, look, is it really an abuse of discretion? There is only one permissible decision in this context. The court had also had a fitness to proceed hearing. Well, given the very high standard, however, I mean, it seems to me that without explanation it may well be. Because this is not an – it's an abuse of discretion standard, but with a high substantive standard. I agree. But I also think that the reason that there's a broad discretion here is that it is the trial court who gets to review. But isn't that why there's an articulation requirement? It's precisely so we can review the reasons for the discretion. And we don't have that here. But that doesn't have an articulation requirement. And what we're looking at – I just read what they said. They said there's an absence that the trial court – the second argument that the trial court acted within its discretion founders on the record's failure to indicate that the trial judge saw the matter as one calling for discretion. That's precisely what we're talking about. Okay. And I would suggest that there was an implicit determination. He did determine that some form of minimal restraint was required. I only have a very short period of time, and I do want to focus strongly on the lack of proof of prejudice in this case. Judge Fisher, you indicated or at least referred to the fact that the court gave a very obvious kind of – don't consider this kind of instruction. He was walking around. He can't be dangerous if he's walking around. I want to focus – He didn't say don't consider it. He never gave a limiting instruction. No, I agree. I agree. I'm just saying that that was implicit, that this is a person who is not dangerous. It's implicit when if you remove a leg restraint that obviously I, as the court, do not believe this person is dangerous. But he said it was imposed – he first said it was imposed for security reasons. And he then said that it was taken off because of a physical impairment. That doesn't suggest the absence of security reasons. Well, it suggests that the jury has nothing to fear. There are security reasons. It suggests that the jury has nothing to fear from this individual. I think there's some implication. The question is how far can that carry you in light of the fact that it was there to begin with for security reasons. Yeah. And, again, I would emphasize that this isn't a DEPA case. You have to have – We're familiar with that. I understand. We really do understand – That Brecht and Fye are the applicable prejudice standards. We understand Brecht. We understand. And you're over time, so I think she has the point.  All right. Thank you. You have a minute. Thank you, Your Honor. I would just state that the error here happened when the court didn't articulate reasons. That's clearly required by DEC. And the record in this case is clear that there's no determination in the exercise of the trial court's discretion that there was a reason for this restraint, despite what the district court may have found about possible reasons the court could have relied on. On the question of prejudice, I think the court's comments really – that that's the best record on what happened here, and it's also the best record on prejudice. The court said it was for security reasons. The court made it clear that it was taking off the brace because it had been a physical impairment. It's about the third time that point's been made today. Okay, Your Honor. I just – I will leave it at that, but I think that the court's comments drew attention to the shackling, and I think that that is the error that we can't ignore here. I would add that DEC is a case that took place that revolved around a penalty phase of a death penalty case. It wasn't the guilt phase, but the penalty phase. And the court felt that the shackling, even at that late stage, after the defendant had already been convicted, was that critical that the court ruled as it did, and I'd ask that that be considered. All right, thank you. Counsel, we appreciate it. It's an interesting case. Case argued as submitted.
judges: Fisher, Berzon, Barzilay